UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM R. CARTER, SR.,

     Plaintiff,

v.                                                                  Case No. 8:25-cv-99-KKM-SPF

DRJ VENICE LLC, *doing business as*
JENKINS CHEVROLET OF VENICE,

     Defendant.

_____

## ORDER

     Pro se plaintiff William R. Carter, Sr., sues DRJ Venice, LLC, a car dealership, in connection with the purchase of a vehicle. *See* Am. Compl. (Doc. 18-1); *see also* Compl. (Doc. 1). DRJ Venice moves to compel arbitration and dismiss. Mot. to Dismiss & Compel Arbitration (Mot.) (Doc. 23). For the reasons below, that motion is granted in part and denied in part.

## I.   BACKGROUND

     Carter alleges in his Amended Complaint that he reached out to DRJ Venice in late March 2024 to inquire about purchasing a Chevrolet Z71 Tahoe without a down payment. *See* Am. Compl. at 2–3. DRJ Venice declined to sell him a Tahoe,

citing his desire not to pay a down payment, but offered to sell him a 2022 Dodge Durango with the price marked up $6,000. *Id.* at 3. According to Carter, DRJ Venice discriminated against him based on his race by raising the interest rate for financing for the vehicle. *Id.* Carter visited the dealership with his son on March 26, 2024, where he says DRJ Venice discriminated against him again by failing to honor his "request to use specific finance companies." *Id.*; *see id.* at 5. Carter eventually left without purchasing a vehicle because of "lack of [a] down payment" and DRJ Venice's agent's "statements that the 'banks weren't budging.' " *Id.*

Shortly after Carter left, one of DRJ Venice's agents called him, apologized, and asked him "to return to finalize the transaction." *Id.* When Carter did so, he says he "was rushed through the signing process with an older gentleman instructing [Carter] to 'sign here' without fully disclosing what was being signed including the arbitration clause, the financing terms such [as] APR, payments, amount financed[,] . . . the right to rescind the contract, or that [Carter] could even take the contract home for review." *Id.* at 3–4. He also says he "was coerced into signing an [a]uto [b]ond document without being informed of its cost[] but was told it was put on the vehicle prior." *Id.* at 4.

2

About nine months later, in late December, Carter reached out to DRJ Venice "to request copies of the transaction documents." *Id.* Through an agent, DRJ Venice provided Carter several documents that lacked Carter's signature. *Id.* When Carter asked for the "correct copies" of the documents, the agent told him "that the digital deal jacket would need to be retrieved and asked [Carter] to call back the following week." *Id.*

DRJ Venice agent Ken Wesenberg called Carter on Christmas Eve and scheduled a meeting for December 26, 2024. *Id.* Carter claims that he "was subjected to further discriminatory treatment" at that meeting, "including being taken through a stairwell while Mr. Wesenberg used an elevator, and experiencing dismissive and condescending behavior during the conversation." *Id.* Another person affiliated with DRJ Venice allegedly called Carter on December 30 and "denied [Carter's] claims[1] and reminded Carter of the arbitration clause in the contract in an intimidating manner." *Id.*

Since filing this action, Carter claims that he has discovered many irregularities in the retail installment sales contract and the buyer's order that DRJ

---

[1] Carter does not specify what claims he presented to DRJ Venice. *See generally* Am. Compl.

Venice provided in support of its earlier motion to dismiss. *Id.* at 5; *see* (Doc. 13). He alleges in particular that "he had never signed, seen, read[,] or authorized the [retail installment sales contract] and [DRJ Venice] [f]orged [Carter's and his son's] electronic signature[s] to create a fraudulent contract that [Carter] had no knowledge of until recently." Am. Compl. at 5

Carter's six-count amended complaint seeks relief under Florida's law criminalizing forgery, *id.* at 6 (citing § 830.01, Fla. Stat.) (Count 1), the Truth in Lending Act, *id.* (citing 15 U.S.C. §§ 1601, 1635) (Count 2), the Equal Credit Opportunity Act, *id.* at 7 (citing 15 U.S.C. § 1691) (Count 3), the Fair Credit Reporting Act, *id.* (citing 15 U.S.C § 1681b) (Count 4), Florida's common law of contracts, *id.* (Count 5), and 42 U.S.C. § 1981, *id.* at 7–8 (Count 5). He seeks $863,623.71 in damages, a free 2024 Z71 Chevrolet Tahoe, and other relief. *Id.* at 8.

DRJ Venice moves to compel arbitration and dismiss. *See* Mot.

## II. LEGAL STANDARD

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements." *Emp'rs Ins. Of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001). The Federal Arbitration Act reflects a liberal federal policy favoring arbitration. *Jpay,*

*Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018). If parties agree to arbitrate a dispute, the court must enforce that agreement. *Id.*

Of course, no party can be forced to submit to arbitration if they have not agreed to do so. *Emps. Ins. Of Wausau*, 251 F.3d at 1322. "Accordingly, the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). When a party seeking to avoid arbitration claims that no agreement exists, "[s]tate law generally governs" because "whether an arbitration agreement exists at all is 'simply a matter of contract.'" *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (internal quotation omitted) (emphasis omitted).

The Court employs a "summary judgment-like standard" to determine whether an arbitration agreement exists. *Bazemore*, 827 F.3d at 1333. If there is a genuine dispute of fact concerning the making of the arbitration agreement, the FAA instructs that "the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default . . . the court shall hear and determine such issue." 9 U.S.C. § 4; *see also Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017). "A dispute is not 'genuine' if it is unsupported by the

evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.' " *Bazemore*, 827 F.3d at 1333 (quoting *Baloco v. Drummond Co.*, 767 F.3d 1229, 1246 (11th Cir. 2014)). If there is no genuine dispute of fact and the Court determines that an applicable agreement to arbitrate exists, "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

## III.   ANALYSIS

Carter fails to demonstrate a genuine dispute as to the existence of a valid arbitration agreement covering his claims. DRJ Venice introduces a facially valid contract for the sale of a 2022 Dodge Durango between Carter and DRJ Venice, dated March 26, 2024, which includes a broad arbitration clause covering "[a]ny claim or dispute . . . which arises out of or relates to [Carter's] credit application, purchase or condition of this Vehicle." (Doc. 23-1) at 4. The agreement facially covers all of Carter's claims, which all "arise[] out of or relate[] to" his purchase of the Durango. *Id.*

Carter does not provide any evidence calling the agreement's validity into question. *See Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013) ("[A] sentence in an unsworn brief is not evidence."). This lack of evidence means that

Carter cannot prevail on his arguments that DRJ Venice acted in bad faith, misled him, and fraudulently induced him to sign the contract. Resp. at 2–4. And as explained below, Carter's other arguments do not establish that the arbitration agreement is unenforceable. *See AMS Staff Leasing, Inc. v. Taylor*, 158 So. 3d 682, 687 (Fla. 4th DCA 2015) ("The party seeking to avoid arbitration bears the burden of proving a contractual defense to enforcement of the arbitration agreement."). DRJ Venice is thus entitled to an order compelling arbitration.

## A. The Arbitration Agreement Is Not Unconscionable

To start, Carter contends that the arbitration agreement is unenforceable because it is unconscionable. The common-law doctrine of unconscionability "prevent[s] the enforcement of contractual provisions that are overreaches by one party to gain 'an unjust and undeserved advantage which it would be inequitable to permit him to enforce.' " *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1157 (Fla. 2014) (quoting *Steinhardt v. Rudolph*, 422 So. 2d 884, 889 (Fla. 3d DCA 1982)). To avoid arbitration based on the agreement's unconscionability, a party "must establish that the arbitration agreement is both procedurally and substantively unconscionable." *Id.* at 1158. In assessing whether an agreement is procedurally unconscionable, a court must focus on "whether the complaining party lacked a meaningful choice when

7

entering into the contract." *Hobby Lobby Stores, Inc. v. Cole*, 287 So. 3d 1272, 1275 (Fla. 5th DCA 2020) (quoting *Basulto*, 141 So. 3d. at 1157 n.3). And a contract is substantively unconscionable if the terms "are so outrageously unfair as to shock the judicial conscience." *Osprey Health Care Ctr., LLC v. Pascazi ex rel. Outwater*, 329 So. 3d 177, 182 (Fla. 2d DCA 2021) (quoting *Zephyr Haven Health & Rehab Ctr., Inc. v. Hardin ex rel. Hardin*, 122 So. 3d 916, 920 (Fla. 2d DCA 2013)).

The only record evidence that Carter points to that might show procedural unconscionability is the time stamp on the contract. He says the stamp indicates that the agreement was printed after 9:00 PM and shows that he was "being rushed through the process without explanation of what was being signed." Resp. at 6; *see* (Doc. 23-1) (each page bearing the stamp "03/26/2024 09:07 pm" in the lower right-hand corner). The evening hour alone does not show that the circumstances under which Carter signed the agreement were so oppressive that he lacked any meaningful choice. He has not shown that the agreement was procedurally unconscionable.

Even if Carter had shown some procedural unconscionability, though, the agreement is not substantively unconscionable. Carter contends that the agreement is substantively unconscionable because it "[1] [l]imits [Carter's] ability to seek remedies in open court; [2] [g]rants [DRJ Venice] broad discretion to act outside the

scope of arbitration; [and 3] [r]equires disputes to be resolved in private for[a] favorable to [DRJ Venice]." Resp. at 4–6. None of these arguments carry the day.

First, the fact that the arbitration agreement prevents Carter from seeking a judicial remedy—the quintessence of alternative dispute resolution—does not render the agreement substantively unconscionable. If it did, arbitration agreements would be per se substantively unconscionable, yet both the United States and Florida strongly favor arbitration. *See, e.g.*, *Picard v. Credit Sols., Inc.*, 564 F.3d 1249, 1253 (11th Cir. 2009) (per curiam) ("The [Federal Arbitration Act] creates a strong federal policy in favor of arbitration."); *Alexander v. Minton*, 855 So. 2d 94, 96 (Fla. 2d DCA 2003) ("Florida favors arbitration to settle disputes outside the courtroom."); *see also Coleman v. Prudential Bache Sec., Inc.*, 802 F.2d 1350, 1352 (11th Cir. 1986) (per curiam) ("[T]here is nothing inherently unfair or oppressive about arbitration clauses.").

Second, though it is true that "[w]here one party is bound to arbitration of its claims but the other is not, there can be substantive unconscionability," *Addit, LLC v. Hengesbach*, 341 So. 3d 362, 368 (Fla. 2d DCA 2022) (quoting *Palm Beach Motor Cars Ltd. v. Jeffries*, 885 So. 2d 990, 992 (Fla. 4th DCA 2004)), Carter has not identified, and I have not found, any provision that applies unequally to Carter and

DRJ Venice, *see* (Doc. 23-1) at 4. Carter also claims that the agreement "violat[es] principles set forth in *Bess v. Check Express*, 294 F.3d 1298 (11th Cir. 2002) by "unfairly favor[ing]" DRJ Venice, Resp. at 5, but does not explain which principles from that case, which applied Alabama law, *see Bess*, 294 F.3d at 1306–07, are relevant, or how the agreement unfairly favors DRJ Venice.

Finally, Carter provides no evidence that the arbitration organizations designated by the agreement—the American Arbitration Association and National Arbitration and Mediation—are biased in DRJ Venice's favor.

Accordingly, Carter has not shown that the agreement is unconscionable.[2]

## B. Carter Has Not Shown a Lack of Mutual Assent

Carter next claims the contract is unenforceable because it lacked mutual assent. To be sure, mutual assent is an essential prerequisite to a valid contract under Florida law. *See Gibson v. Courtois*, 539 So. 2d 459, 460 (Fla. 1989) ("Absent mutual

---

[2] Under his unconscionability heading, Carter also argues that a "buyer's order" like the one DRJ Venice introduces cannot "be used as a binding contract to compel arbitration," citing *Garcia v. Mason Contract Products, LLC*, 2020 WL 2104343 (S.D. Fla. May 1, 2020). I have been unable to find a case matching that citation. And other authority holds that arbitration agreements in buyer's orders like this one are enforceable. *See, e.g.*, *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 948–49 (11th Cir. 1999) (enforcing arbitration agreement contained in vehicle buyer's order), *abrogated in part on other grounds by Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009); *Arrasola v. MGP Motor Holdings, LLC*, 172 So. 3d 508, 513 (Fla. 3d DCA 2015) ("The arbitration provisions within the [Retail Buyer's Order] are . . . enforceable.").

assent, neither the contract nor any of its provisions come into existence."). Yet a signature is usually "a demonstration and confirmation of the parties' assent." *Eglin Fed. Credit Union v. Baird*, 400 So. 3d 643, 646 (Fla. 1st DCA 2024), *reh'g denied* (Jan. 15, 2025). Carter does not dispute that he signed the agreement. *See* (Doc. 23-1) at 5 (signature page). Nevertheless, he argues that because the agreement provides that " 'Seller agrees to deliver the Vehicle to you on the date the Retail Installment Sale Contract is signed by Seller and you,' " Resp. at 7 (quoting (Doc. 23-1) at 4), "[i]f no Retail Installment Sale Contract . . . was executed by both parties, then there was also no mutual assent," *id.* The requirement of a signed retail installment sale contract is a condition precedent to DRJ Venice's obligation to perform under the agreement, not evidence of a lack of mutual assent. *See Miracle Health Servs., Inc. v. Progressive Select Ins. Co.*, 326 So. 3d 109, 113 (Fla. 3d DCA 2021). In any event, DRJ Venice has filed a retail installment sale contract for a 2022 Dodge Durango signed by Carter, *see* (Doc. 13-2), and Carter provides no evidence casting doubt on the validity or authenticity of that agreement. Carter has not shown a lack of mutual assent.

## C. An Arbitrator Will Decide Which of Carter's Claims Fall Within the Arbitration Agreement

Carter argues that several of his claims are not subject to arbitration, including those for race discrimination under 42 U.SC. § 1981, violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA),[3] and criminal fraud. Resp. at 7–8. This argument does not get off the ground, as the parties' arbitration agreement provides that "the arbitrability of the claim or dispute" is itself subject to arbitration. (Doc. 23-1) at 4; *see Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024) (explaining that parties can "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes" (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019))). It is therefore for the arbitrator to decide which of Carter's claims are arbitrable.

## D. Carter Has Not Shown That He Was Unconstitutionally Deprived of the Right to a Jury Trial or Due Process

Finally, Carter argues that his entry into the arbitration agreement was not knowing and voluntary and that therefore any waiver of his right to a jury trial or his due process rights was invalid. Resp. at 8–9. Carter misapprehends the relevant

---

[3] While Carter mentions FDUTPA in his pro se complaint form filed with his Amended Complaint, *see* (Doc. 18) at 3, the document styled as his Amended Complaint does not itself include a FDUTPA count, *see* Am. Compl.

12

standard. "[G]eneral contract principles govern the enforceability of arbitration agreements and . . . no heightened 'knowing and voluntary' standard applies, even where the covered claims include federal statutory claims generally involving a jury trial right." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1372 (11th Cir. 2005). Carter has not shown a constitutional problem with referring his claims to arbitration. And as explained above, he has not shown that the agreement is unenforceable on contract-law grounds.

### E. A Stay, Rather Than Dismissal, Is Required

DRJ Venice asks that dismissal follow an order compelling arbitration. The Federal Arbitration Act, though, does not afford a court "discretion to dismiss [a] suit on the basis that all the claims are subject to arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024) (citing 9 U.S.C. § 3). A stay, not dismissal, is the proper course.

## IV.   CONCLUSION

DRJ Venice produces a facially valid arbitration agreement covering the claims in this action, and Carter fails to establish any defense. Accordingly, the following is **ORDERED:**

1.  Defendant DRJ Venice LLC's Motion to Dismiss Amended Complaint and Compel Arbitration (Doc. 23) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

2.  This action is **REFERRED** to arbitration under the parties' agreement.

3.  This action is **STAYED** pending arbitration.

4.  The parties must file a status report on **July 14, 2025**, and every ninety days thereafter, apprising the Court of the arbitration's progress. The parties must file a notice within fourteen days of the conclusion of the arbitration proceeding.

5.  The clerk is directed to **ADMINISTRATIVELY CLOSE** this case.

**ORDERED** in Tampa, Florida, on April 16, 2025.

Kathryn Kimball Mizelle
United States District Judge

14